GARY L. JOHNSON [4353]
KRISTINA H. RUEDAS [14306]
RICHARDS BRANDT MILLER NELSON
 *Attorneys for Defendants*
Wells Fargo Center, 15th Floor
299 South Main Street
P.O. Box 2465
Salt Lake City, Utah  84110-2465
Email: gary-johnson@rbmn.com
       kristina-ruedas@rbmn.com
Telephone: (801) 531-2000
Fax No.: (801) 532-5506

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DIANE PALMER and HEATHER SMITH,<br><br>         Plaintiffs,<br><br>vs.<br><br>KEITH E. BALOH, an individual; DEALERS' CHOICE TRUCKAWAY SYSTEM, INC. dba TRUCKMOVERS, a Kansas corporation; DOES I-V; and ROE CORPORATIONS VI-X,<br><br>         Defendants. | **MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF DIANE PALMER'S CLAIMS FOR PAST LOST WAGES, FUTURE LOST EARNING CAPACITY, AND FUTURE MEDICAL EXPENSES AND MEMORANDUM IN SUPPORT**<br><br>Civil No. 2:17-cv-00290-DAK<br><br>Judge Dale A. Kimball |

Defendants Keith E. Baloh and Dealers' Choice Truckaway System, Inc. dba Truckmovers, by and through their counsel of record, Gary L. Johnson and Kristina H. Ruedas of RICHARDS BRANDT MILLER NELSON and pursuant to Rules 7 and 56 of the Federal Rules of Civil Procedure and DUCivR 56-1, respectfully move this Court for summary judgment on Plaintiff Diane Palmer's claims for past lost wages, future lost earning capacity, and future medical expenses.

**Relief Sought**

Defendants respectfully request the Court dismiss Plaintiff Diane Palmer's claims for past lost wages, future lost earning capacity, and future medical expenses because Plaintiff has failed to produce any competent evidence to raise these claims above speculation. Plaintiff has also failed to properly and timely designate any expert witness to support these claims as required by Utah law.

**Statement of Undisputed Material Facts[1]**

*A. Past Lost Wages*

1.      In her most recent Rule 26(a)(1) disclosures, Plaintiff Diane Palmer alleged that she suffered $240,000 in lost wages as a result of the subject accident. (*See* Plaintiffs' Second Supplemental Initial Disclosures and Designation of Non-Retained Expert Witnesses, p. 5 (**Exhibit 1**).)

2.      Ms. Palmer claims she would have earned $5,000 per month between June 2013 and June 2017.

3.      Ms. Palmer is a Certified Nurse Assistant and cares for patients out of her home, which is a Certified Family Home under Idaho state law. (*See* Deposition of Diane Palmer, December 5, 2017, 18:11-13, 23:10-12 (**Exhibit 2**).)

4.      Ms. Palmer testified that in 2002, she cared for a woman who paid her $1,500 a month. There was no written contract to support this payment. (*See id.* at 45:24-46:14.) Ms.

---

[1] Defendants assert the following facts strictly for purposes of summary judgment and reserves the right to dispute any or all of the following facts during litigation, discovery, or at trial.

Palmer admitted that not all of the $1,500 went to business profit, as there were hard costs related to caring for the patient. (*See id.* at 47:10-25.)

5.      Ms. Palmer testified that subsequent patients paid her $1,300 per month, $1,800 per month, and $2,500 per month. (*See id.* at 48:1-12.)

6.      Ms. Palmer did not care for any patients in her home between 2009 and April 2013, when she started to care for Stuart Call. (*See id.* at 32:15-17.)

7.      Ms. Palmer testified that she did not file taxes in 2010, 2011, 2012, 2014, 2015, or 2016. (*See id.* at 89:17-90:7.) She testified that she filed taxes in 2007 and 2009, but could not produce those returns. (*See id.* at 89:9-16, 90:8-16.)

8.      In 2006, Ms. Palmer reported a net income of $17,885 from her employer at the time, Franklin County Medical Center. (*See* Plaintiff's 2006 Tax Return (**Exhibit 3**).)

9.      In 2008, Ms. Palmer reported a net business income of $12,467. (*See* Plaintiff's 2008 Tax Return, Schedule C (**Exhibit 4**).)

10.     In 2013, Ms. Palmer reported a gross business income of $15,000. (*See* Plaintiff's 2013 Tax Return, Schedule C (**Exhibit 5**).)

11.     Ms. Palmer admitted that there were expenses incurred in relationship to that $15,000 of claimed income, but had no idea how much those expenses would have been. (*See id.* at 83:11-17.)

12.     Ms. Palmer claims that Stuart Call paid her $5,000 per month for April, May, and June 2013. However, Ms. Palmer testified that he gave her a check to fill out in the amount of $5,000, but he "decided not to have [her] cash the check." (*See id.* at 69:3-12.)

13.     Instead, Ms. Palmer testified that she would keep the check, and Mr. Call would give her $3,000 cash and his card. Ms. Palmer would pay her bills with what he had left in his account. (*See id.* at 69:11-20.)

14.     In early August 2013, Ms. Palmer married Stuart Call. (*See id.* at 8:10-15.)

15.     When asked why Mr. Call stopped paying her $5,000 per month to care for him after August 2013, Ms. Palmer testified that the money just remained in his checking account, and that she had full access to that account. (*See id.* at 95:6-96:17.)

16.     Although Ms. Palmer testified that she had to reimburse her daughters for their help caring for Mr. Call, she could not say how much she compensated them. (*See id.* at 84:23-86:14, 87:23-88:19.)

17.     Defendants served the following Interrogatory on Ms. Palmer:

List separately each employment you have held during your life and state as to each:
     a.     name and address of the employer;
     b.     the beginning and concluding date of employment;
     c.     job title(s) or description(s);
     d.     the specific type of work or services performed;
     e.     rate of pay and annual income, including bonuses and other financial benefits, for each year of such employment;
     f.     where and at what facilities you work was performed, including, but not limited to, the premises of any other defendant in this case, and the inclusive dates at any such premises;
     g.     the identity of each of your employer(s) while you worked on each such property;
     h.     the average number of hours you worked per week during your employment with each employer; and
     i.     the reason(s) you left such employment.

Ms. Palmer responded: "Plaintiff started working in home hospice/care industry in 2004. She would typically care for 1-2 patients at a time. The payments she received equaled anywhere

between about $1,600 - $5,000 per month per patient." (*See* Diane Palmer's Responses to Defendants' First Set of Discovery Requests, p. 5 (**Exhibit 6**).)

18.     Defendants served Ms. Palmer with additional interrogatories asking her to state her current income, including any sources of revenue or profits that she uses to support herself; to describe her efforts to obtain employment since the subject accident; and to identify any individual who has told her she cannot work following the subject accident. (*See* Defendants' Second Set of Interrogatories to Plaintiff Diane Palmer, p. 4 (**Exhibit 7**).)

19.     To date, Ms. Palmer has not answered these interrogatories despite Defendants' counsel's repeated attempts to obtain answers. Plaintiff's counsel's represented that responses were sent, but Defendants' counsel never received them. (*See* Emails between counsel dated May 22, 2018 (**Exhibit 8**).)

### B.  *Future Lost Wages*

20.     Plaintiff Diane Palmer alleged that she expected the amount of claimed lost wages to change during expert discovery to include future lost wages. (*See* Ex. 1 at p. 5.)

21.     Plaintiff designated only one retained expert witness, Dr. Anthony Joseph. Dr. Joseph is expected to testify regarding "the reasonableness and necessity of Plaintiff's treatment, that Plaintiff suffered a 12% whole body permanent impairment as a result of the accident, future medical treatment reasonable and necessary, and the likely duration of Plaintiff's injuries." (*See* Plaintiff's Expert Witness Designations, p. 4 (**Exhibit 9**).)

22.     At his deposition, Dr. Joseph testified that he did not have any opinions on Ms. Palmer's employability or her prospects in the job market before or after the accident. (*See* Deposition of Anthony Joseph, M.D., April 3, 2018, at 46:18:21 (**Exhibit 10**).)

23.     Dr. Joseph also testified that he has never obtained a vocational evaluation for Ms. Palmer regarding her employability. (*See id.* at 47:4-7.)

24.     Dr. Joseph also testified that he had never reviewed Ms. Palmer's employment history with her in the context of the impairment rating he assigned her. (*See id.* at 47:8-11.)

25.     In her First Supplemental Initial Disclosures, Ms. Palmer identified two witnesses who were allegedly prospective clients: James Mathey and Kara Schell. These witnesses were expected to testify that they were prepared to pay Ms. Palmer $5,000 per month for her services, but that she was unable to offer her services. (*See* Plaintiffs' First Supplemental Initial Disclosures and Designation of Non-retained Expert Witnesses, p. 4 (**Exhibit 11**).)

26.     Mr. Mathey is a childhood friend of Ms. Palmer. (*See* Deposition of James Mathey, May 14, 2018, at 16:4-13 (**Exhibit 12**).)

27.     At his deposition, Mr. Mathey testified that he wanted Diane Palmer to care for him in her home after he underwent brain surgery in July 2013. (*See id.* at 23:22-24:1.)

28.     Mr. Mathey testified that he told Ms. Palmer he would pay her "everything he's got." (*See id.* at 24:2-10.)

29.     When asked what funds he would use to pay Ms. Palmer $5,000 per month, as stated in Plaintiff's First Supplemental Initial Disclosures, he testified that he would have paid her his entire Social Security check. (*See id.* at 50:16-21.)

30.     However, Mr. Mathey testified that between July and October 2013 he did not receive any income, Social Security, or benefits. (*See id.* at 26:20-22.)

31.     At the time of the deposition, Mr. Mathey was receiving $1,133.70 per month in Social Security benefits, which was the most he had received in benefits per month since his July 2013 surgery. (*See id.* at 44:2-17.)

32.     If he had lived at Ms. Palmer's home, he would have expected Ms. Palmer to pay for his food, housing, and his portion of utilities out of his Social Security check. (*See id.* at 51:8-19.)

33.     Mr. Mathey testified that he believed Medicare would have paid for him to live at Ms. Palmer's house, but never received confirmation from Medicare that it would, and did not know how much Medicare had paid for him to stay in a hospice after his surgery. (*See id.* at 49:11-21.)

34.     When asked how much he would pay Ms. Palmer per month if he were to move to her house now, he testified: "I don't know. How much would I be able to pay her? I don't even know." (*See id.* at 59:13-16.)

35.     Plaintiff only provided a phone number for Kara Schell, which is not a functioning number. Plaintiff did not provide an address for Ms. Schell, so Defendants could not issue a subpoena for her deposition. Defendants' counsel repeatedly asked for more information for Ms. Schell. (*See* Email from Kristina Ruedas to Jed Strong dated March 9, 2018 (**Exhibit 13**).) Plaintiff's counsel did not assist in locating Ms. Schell, and when faced with the fact discovery deadline, indicated that they would not be calling Ms. Schell as a witness.

C. *Future Medical Expenses*

36.     Ms. Palmer testified at her deposition that no doctor or health care provider has told her that she is going to need future surgeries or future treatment. (*See* Ex. 2 at 158:3-6.)

37.     Defendants served an interrogatory on Ms. Palmer asking her to "specify any future medical treatment or intervention that you claim will be necessary due to injuries sustained in the subject accident, including who will perform the treatment or intervention, what it will cost, and when it will occur." Ms. Palmer responded that she would "supplement her further medical treatment during expert discovery." (*See* Ex. 6 at p. 8.)

38.     In her most recent Rule 26(a)(1) disclosures, Plaintiff Diane Palmer alleged that she had suffered damages for future medical expenses, but that those expenses would be "determined via experts." (*See* Ex. 1 at p. 4.)

39.     Plaintiff's expert witness disclosures and reports were due on May 31, 2018, under the Court's Scheduling Order. Plaintiff failed to serve expert witness disclosures and reports, but Defendants' counsel retroactively granted a one-week extension. (*See* Email from Kristina Ruedas to Brandee Davis, June 5, 2018 (**Exhibit 14**).)

40.     Ms. Palmer designated only one retained expert witness, Dr. Anthony Joseph, to testify regarding Plaintiff's "future medical treatment reasonable and necessary." (*See* Ex. 9 at p. 4.) Plaintiff's expert witness designation also indicated that "Dr. Joseph has conducted, and will conduct, a follow up physical examination of Plaintiff on June 25, 2018." (*See id.* at p. 5.)

41.     Plaintiff's expert witness designation did not include a report from Dr. Joseph. Defendant's counsel retroactively agreed to wait until after the June 25 examination to receive a report from Dr. Joseph. (*See* Email from Kristina Ruedas to Brandee Davis, June 25, 2018 (**Exhibit 15**).)

42.     Dr. Joseph did not examine Ms. Palmer on June 25, and Plaintiff's counsel indicated that they were not expecting Dr. Joseph to prepare a report. (*See* Emails from Brandee Davis to Kristina Ruedas, June 27, 2018 (**Exhibit 16**).)

43.     Plaintiff has never produced any expert report from Dr. Joseph.

44.     Ms. Palmer did not designate any life care planner or economist as expert witnesses. (*See* Ex. 9.)

45.     Plaintiff designated her treating providers as non-retained expert witnesses; however, none of these witnesses were designated to testify regarding Ms. Palmer's future medical treatment.

## Argument

Partial summary judgment is appropriate on Ms. Palmer's claims for past lost wages, future lost earning capacity, and future medical expenses because they are impermissibly speculative. Ms. Palmer has failed to produce any evidence to support her claims, and has failed to establish the amount of any of these categories of damages with any certainty. Further, Plaintiff has failed to designate any expert to support her claims. Therefore, this Court should dismiss these claims as a matter of law.

## I.     Summary Judgment Standard

"Summary Judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Hardscrabble Ranch, L.L.C. v. United States*, 840 F.3d 1216, 1219 (10th Cir. 2016); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(a). To meet this initial burden "the movant 'need only point to those portions of the record that demonstrate an absence of a genuine issue of material fact

given the relevant substantive law.'" *U.S. v. Simons, et al.*, 129 F.3d 1386, 1388 (10th Cir. 1997)

(quoting *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)).

"To defeat a motion for summary judgment, evidence, including testimony, must be

based on more than mere speculation, conjecture or surmise." *Bones v. Honeywell Int'l, Inc., et

al.*, 366 F.3d 869, 875 (10th Cir. 2004). The non-moving party must do more than simply show

that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd.,

et al. v. Zenith Radio Corp., et al.*, 475 U.S. 574, 586 (1986). "[A] party cannot rest on ignorance

of facts" in response to a motion for summary judgment. *Conaway v. Smith, et al.*, 853 F.2d 789,

794 (10th Cir. 1988).

II.   **Summary judgment is appropriate on Ms. Palmer's claims for past lost wages,
future lost earnings, and future medical expenses because she has failed to
produce evidence or expert testimony to support her claims.**

To establish a claim of negligence, the "plaintiff must establish four essential elements:

(1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that

the breach of duty was the proximate cause of the plaintiff's injury, and (4) that the plaintiff in

fact suffered injuries or damages." *Warenski v. Advanced RV Supply*, 2011 UT App 197, ¶ 6, 257

P.3d 1096 (internal citations omitted).

In order to prove the element of damages, a plaintiff must first establish the fact of

damages, or that damages actually occurred. *See Atkin Wright & Miles v. Mountain States Tel. &

Tel. Co.*, 709 P.2d 330, 336 (Utah 1985). To prove the fact of damages, a plaintiff is required to

produce evidence that does more "than merely give rise to speculation that damages in fact

occurred; it must give rise to a reasonable probability that the plaintiff suffered damage as result

of a breach." *See id.* Once a plaintiff establishes the fact of damages, she must also prove the

amount of damages. *See id.* "The level of persuasiveness required to establish the fact of loss is generally higher than that required to establish the amount of a loss." *Id.* (emphasis in original). Further, "[w]hile the standard for determining the amount of damages is not so exacting as the standard for proving the fact of damages, there still must be evidence that rises above speculation and provides a reasonable, even though not necessarily precise, estimate of damages." *Id.*

### A.  Past Lost Wages and Future Lost Earning Capacity

This Court should dismiss Ms. Palmer's claims for past lost wages and future earning capacity because she has failed to identify any credible expert testimony to support her claims, and the evidence contradicts her speculative allegations of lost wages.

Utah Courts have long recognized the need to establish a claim for the loss to earning capacity through competent expert testimony. *See Dalebout v. Union Pac. R. Co.*, 1999 UT App 151, ¶ 21, 980 P.2d 1194; *see also Gallegos ex rel. Rynes v. Dick Simon Trucking, Inc.*, 2004 UT App 322, 110 P.3d 710; *Corbett v. Seamons*, 904 P.2d 229, 234 (Utah Ct. App. 1995). A plaintiff who asserts a claim for loss to future earning capacity must demonstrate, through expert testimony, "a probability rather than a possibility" that a loss to future income will occur. *See Dalebout*, 1999 UT App 151 at ¶ 21.

As a general rule, a person cannot recover lost business profits as a measure of lost earning capacity. *Corbett v. Seamons,* 904 P.2d 229, 233 (Utah Ct. App. 1995) (internal citations omitted). This rule reflects the valid concern that the loss of business profits which depend on a number of variable factors is "uncertain and speculative." *Id.* In those circumstances, "loss of profits cannot be considered either as an element or the measure of damages." *Id.*

When the injured party works in his or her own business and does not receive a set salary or wage, earning capacity may be calculated by reference to the cost of hiring a replacement to perform the tasks the injured party was formerly able to do. *Id.* In *Corbett*, the appellate court upheld the jury's award for lost earning capacity because the losses were calculated on reasonable estimates of the plaintiff's time and hourly worth of her services, amounts actually paid for replacement services, and credible expert testimony. *See id.* at 234.

In contrast, Plaintiff did not designate any expert witness to testify regarding her claimed lost wages or future lost earning capacity. Plaintiff's summary of the opinions of her only retained expert witness, Dr. Anthony Joseph, does not contain any reference to her past or future employability. (*See* Ex. 9 at p. 4.)[2] Further, Dr. Joseph testified at his deposition that he did not have any opinions on Ms. Palmer's employability or her prospects in the job market before or after the accident. (*See* Ex. 10 at 46:18:21.) Dr. Joseph also testified that he has never obtained a vocational evaluation for Ms. Palmer regarding her employability, and has never reviewed her employment history. (*See id.* at 47:4-11.) Without competent expert testimony to explain the impact Ms. Palmer's accident had on her ability to work, the jury would be forced to impermissibly speculate on the fact and amount of her claimed damages.

This is especially true when the evidence produced by Plaintiff fails to support the amount of lost wages and lost future earning capacity that she is claiming. Plaintiff's claim for lost wages is based on her allegations that Stuart Call paid her $5,000 per month for her services, and that, absent the subject accident, other prospective clients would have paid her $5,000 per

---

[2] In addition, as set forth in section B, below, Dr. Joseph should be excluded as a retained expert witness because Plaintiff did not fairly disclose his opinions in an expert report.

month as well. However, at her deposition she admitted that she wrote the checks and invoices for $5,000 per month, but Stuart Call asked her not to cash the check. (*See* Ex. 2 at 69:3-12.) Instead, he gave her cash and access to his checking account to pay her bills. (*See id.* at 69:11-20.) Approximately two months after the accident, Ms. Palmer married her patient. (*See id.* at 8:10-15.) When asked Mr. Call allegedly stopped paying her $5,000 per month to care for him, Ms. Palmer testified that the money just remained in his checking account, and that she had full access to that account. (*See id.* at 95:6-96:17.) This evidence belies Ms. Palmer's claim that she would have earned a net income of $5,000 per month but for the accident.

Ms. Palmer also has an inconsistent work history in the decade before the accident. Ms. Palmer admitted that in the four years prior to taking Stuart Call in as a patient, she did not care for any patients in her home. (*See id.* at 32:15-17.) She also testified that since she began operating a Certified Family Home out of her house, patients have paid her between $1,300 and $2,500 per month. (*See id.* at 48:1-12.) Her 2008 tax returns reflect a net business income of $12,467. (*See* Ex. 4.) She did not file or produce tax returns for 2007, 2009, 2010, 2011, 2012, 2014, 2015, or 2016. (*See* Ex. 2 at 89:9-90:16.)

Ms. Palmer was only able to identify one prospective client who allegedly would have paid her $5,000 per month. While James Mathey said that he would have paid her $5,000 per month, he admitted that between July and October 2013, he did not receive any income, Social Security, or benefits. (*See* Ex. 12 at 26:20-22.) He also testified that at the time of his deposition, he was receiving $1,133.70 per month in Social Security benefits, which was the most he had received in benefits per month since his July 2013 surgery. (*See id.* at 44:2-17.) If he had lived at Ms. Palmer's home, he would have expected Ms. Palmer to pay for his food, housing, and his

portion of utilities out of his Social Security check. (*See id.* at 51:8-19.) Ultimately, he testified

that he "[didn't] even know" how much he would pay Ms. Palmer if he were to move into her

house. (*See id.* at 59:13-16.)

Finally, Ms. Palmer should be precluded from introducing any additional evidence to

support her claims because of her failure to respond to Defendants' Interrogatories No. 3, 16, 18,

and 20. (*See* Exs. 6-7.) These inconsistencies underscore the need for expert testimony to support

her claims. Because Plaintiff has failed to disclose any competent evidence to support her lost

wages and earning capacity claims, they must be dismissed as a matter of law.

### B.  Future Medical Expenses

The Court should dismiss Plaintiff's claim for future medical expenses because Plaintiff

has failed to produce any evidence or expert testimony to support her claim. To establish any

claim for damages, Ms. Palmer is required to produce evidence that does more "than merely give

rise to speculation that damages in fact occurred; it must give rise to a reasonable probability that

the plaintiff suffered damage as result of a breach." *Atkin Wright & Miles*, 709 P.2d at 336. She

must also provide a "reasonable, even though not necessarily precise, estimate of damages." *Id.*

First, Plaintiff did not produce any evidence during fact discovery that would support a

claim for future medical expenses. No doctor or health care provider has told Ms. Palmer that she

is going to need future surgeries or future treatment. (*See* Ex. 2 at 158:3-6.) None of Ms.

Palmer's treating providers or non-retained expert witnesses will testify regarding future

surgeries or future treatment.

Second, Dr. Joseph should be precluded from offering any expert testimony, including on

the subject of future medical expenses. Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure

requires an expert witness disclosure to be "accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case." This report must contain a complete statement of all opinions the witness will express and the basis and reasons for them, the facts or data considered by the witness in forming them, and any exhibits that will be used to summarize or support them. *Id.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. *Id.* 37(c)(1). The court may also impose other appropriate sanctions, including prohibiting the disobedient party from supporting designated claims, or from introducing designated matters in evidence. *See id.* 37(b)(2)(A)(ii).

Plaintiff cannot show that her failure to produce an expert report for Dr. Joseph was substantially justified or harmless. Plaintiff's counsel was offered at least two extensions to allow Ms. Palmer to meet with Dr. Joseph again, and for Dr. Joseph to draft an expert report. (*See* Exs. 14-16.) This failure is also not harmless as Defendants have already produced their expert witness disclosures and reports, and Plaintiff's counsel has already conducted discovery on Defendants' experts' opinions. If Plaintiff were now allowed to admit an expert report from Dr. Joseph, she would have the benefit of responding to Defendants' experts' reports. Excluding Dr. Joseph as an expert witness and dismissing Plaintiff's lost future earnings and future medical expenses is an appropriate sanction.

Finally, Plaintiff failed to designate an expert witness to testify regarding a life care plan and the cost of any future treatments, discounted to the present. Because Plaintiff has failed to

produce evidence of the need or cost of future treatment that would rise above speculation, this Court should dismiss that claim as a matter of law.

### Conclusion

For the foregoing reasons, Defendants respectfully request the Court dismiss Plaintiff Diane Palmer's claims for past lost wages, future lost earning capacity, and future medical expenses, with prejudice and as a matter of law.

DATED this 25th day of October, 2018.

RICHARDS BRANDT MILLER NELSON

*/s/ Kristina H. Ruedas*
Gary L. Johnson
Kristina H. Ruedas
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 25th day of October, 2018, I electronically filed the foregoing **MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF DIANE PALMER'S CLAIMS FOR PAST LOST WAGES, FUTURE LOST EARNING CAPACITY, AND FUTURE MEDICAL EXPENSES AND MEMORANDUM IN SUPPORT** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

| | | |
|---|---|---|
| Zachary P. Lowe | ☐ | U.S. Mail – Postage Prepaid |
| Eric Hinckley | ☐ | Hand Delivery |
| Brandee R. Davis | **X** | Electronic Filing |
| LOWE LAW GROUP | ☐ | Email |
| 6028 South Ridgeline Drive, Ste. 200 | | |
| Ogden, UT  84405 | | |
| *Attorneys for Plaintiffs* | | |


*/s/ Peggy Stockton*
_____

G:\EDSI\DOCS\09263\1169\1866214.DOCX