IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DIANE PALMER and HEATHER SMITH,<br><br>    Plaintiffs,<br><br>vs.<br><br>KEITH E. BALOH, an individual; DEALERS' CHOICE TRUACKAWAY SYSTEM, INC. dba TRUCKMOVERS, a Kansas Corporation; DOES I-V; and ROE CORPORATIONS VI-X,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:17-CV-00290-DAK<br><br>Judge Dale A. Kimball |

      This matter is before the court on Defendants Keith E. Baloh and Dealers' Choice Truckaway System, Inc. dba Truckmovers' Motion for Partial Summary Judgment [ECF Docket No. 30] and Motion for Summary Judgment [ECF Docket No. 31] pursuant to Rule 56 of the Federal Rules of Civil Procedure. The court held a hearing on the motions on February 8, 2019. At the hearing, Plaintiffs were represented by Tyler Christensen, and Defendants were represented by Kristina H. Ruedas and Gary L. Johnson. The court took the matter under advisement. The court considered carefully the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motion. Now being fully advised, the court issues the following Memorandum Decision and Order.

## BACKGROUND

      Plaintiffs Diane Palmer ("Palmer") and Heather Smith ("Smith") are residents of Grace, Idaho; Palmer is Smith's mother. Palmer is a Certified Nurse Assistant and cares for patients out

1

of her home, which is a Certified Family Home under Idaho state law. Defendant Keith E. Baloh ("Baloh") is a resident of Crawford County, Kansas, and Defendant Dealers' Choice Truckaway Systems, Inc. dba Truckmovers ("Truckmovers") is a Kansas corporation. At the time of the events giving rise to the Complaint, Baloh was employed by Truckmovers. On or around June 8, 2013, Palmer was driving her vehicle on Interstate-15 and pulling a 30-foot cargo trailer in Beaver County, Utah. Around the same time, Baloh was driving a Truckmovers commercial vehicle behind Palmer on the interstate. While following Palmer, Baloh slammed into the rear of Palmer's vehicle and trailer causing Palmer to lose control of the vehicle. The accident resulted in personal injuries to Palmer and the destruction of the trailer and its contents.

As a result of the accident, Palmer claims $240,000 in lost wages. Her claim is based on income she alleges she would have earned between June 2013 and June 2017 for taking care of patients in her home. Palmer did not work between 2009 and April 2013, but prior to 2009, she claims various patients paid her amounts ranging from $1,300 to $2,500 per month. Additionally, from 2007 to 2016, she only filed two tax returns. In 2008, her net business income was $12,467, and in 2013 she reported $15,000 in gross business income; she admitted there were expenses incurred in relation to the $15,000, but she did not know how much those expenses were.

In April 2013, Palmer began caring for Stuart Call ("Call") in her home. Palmer claims Call paid her $5,000 a month for April, May, and June 2013—partly in cash and the remainder from Call's debit card which Palmer used to pay her bills. Palmer has produced copies of three checks for $5,000 that she says Call paid her for her caretaking. However, she admitted to writing the checks herself and never cashing them. Following the accident, in July 2013, Palmer

claims she reimbursed her daughters for their help in caring for Call, but she could not say how much she paid them. Then, in August 2013, Palmer married Call.

Apart from Call, Palmer identified two prospective clients whose business she allegedly lost due to the accident: James Mathey ("Mathey"), whom Palmer had known since she was a child, and Kara Schell ("Schell"). Defendants deposed Mathey on May 14, 2018. Mathey claimed he would have paid Palmer $5,000 a month or "everything he's got" for her care after his brain surgery in July 2013. Yet, Mathey had no source of income or benefits between July and October 2013, and, at the time of his deposition, he was receiving $1,333.70 a month in Social Security—the most he had received since his brain surgery. Mathey believed that Medicare would have paid for him to stay at Palmer's house after his surgery. As for Schell, Palmer never provided Defendants with her correct contact information and eventually indicated that she would not call Schell as a witness.

Palmer retained only one expert witness, Dr. Anthony Joseph ("Dr. Joseph"). Dr. Joseph's first and only examination of Palmer took place on May 6, 2014. As a result of that visit, Dr. Joseph assigned Palmer a 12% whole body impairment rating. A follow-up examination was scheduled for June 25, 2018, but that appointment never took place. Defendants deposed Dr. Joseph on April 3, 2018. To date, Dr. Joseph has not produced a written expert report detailing his opinions and conclusions regarding Palmer's injuries or treatment.

As for Smith, shortly after the accident, individuals involved with the accident notified her that the items in the trailer were destroyed. Smith owned some of the destroyed items, but she was not in the car with Palmer at the time of the accident. Smith sent the items with Palmer because Smith was in the process of moving back to Idaho. Following the accident, at the request of Palmer's former attorney, Smith created a list detailing her items in the trailer along

with each item's estimated value. Smith claims that $52,277.43 of the property allegedly damaged in the accident belonged to her.

On March 20, 2017, Palmer filed the instant lawsuit against Defendants in Utah state court. Plaintiffs' Complaint asserts two causes of action: (1) a negligence claim against Baloh; and (2) a vicarious liability claim against Truckmovers. After Defendants removed the case to this court, Palmer filed an Amended Complaint on July 21, 2017. The Amended Complaint added Smith as a plaintiff.

## DISCUSSION

Defendants move for (1) partial summary judgment on Palmer's damages claims for past lost wages, future lost earning capacity, and future medical expenses; and (2) summary judgment on all of Smith's claims. "Summary judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Hardscrabble Ranch, L.L.C. v. United States*, 840 F.3d 1216, 1219 (10th Cir. 2016). When applying this standard, the court views "the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Fowler v. United States*, 647 F.3d 1232, 1237 (10th Cir. 2011). Moreover, to defeat a motion for summary judgment, "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise" because "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

### I. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants move for partial summary judgment on Palmer's damages claims for past lost wages, future lost earning capacity, and future medical expenses. To establish a claim for negligence, a plaintiff must establish the following four elements: "(1) a duty of reasonable care

4

owed by the defendant to plaintiff; (2) a breach of that duty; (3) the causation, both actually and proximately, of injury; and (4) the suffering of damages by the plaintiff." *Gables at Sterling Vill. Homeowners Ass'n, Inc. v. Castlewood-Sterling Vill. I, LLC*, 417 P.3d 95, 110 (Utah 2018) (quoting *Williams v. Melby*, 699 P.2d 723, 726 (Utah 1985)). For the fourth element, damages, a plaintiff must prove two points: (1) the fact that damages actually occurred; and (2) the amount of those alleged damages. *Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.*, 709 P.2d 330, 336 (Utah 1985). For the first point, a plaintiff must provide evidence that gives "rise to a reasonable probability that the plaintiff suffered damage as a result of a breach"; mere speculation that damages occurred is insufficient. *Id.* For the second, the evidence must rise above speculation and provide a "reasonable, even though not necessarily precise, estimate of damages." *Id.*

### A. Past Lost Wages

Palmer claims $240,000 in lost wages based on a calculation of $5,000 per month from June 2013 to June 2017. Her claim relies on income she alleges she would have made caring for Mathey and Call. Palmer identified Mathey as a prospective client who was willing to pay her $5,000 a month for her care, but the evidence undermines that claim. Specifically, Mathey testified that he did not receive any income, Social Security, or benefits between July and October 2013. While Mathey believed Medicare would cover the cost of his care, he never received any confirmation that Medicare would actually do so. Further, at the time of his deposition, he was receiving $1,333.70 a month in Social Security—the most he had received since his July 2013 brain surgery. Accordingly, Mathey's testimony is unsubstantiated and too speculative for the court to allow at trial.

Additionally, the parties disagree as to the reliability of the checks Palmer provided in support of her claim that Call paid her $5,000 in April, May, and June 2013. Palmer's 2013 tax return, in which she claimed $15,000 in gross business income arguably corroborates that claim. Nevertheless, given her marriage to Call in August 2013, any lost wages Palmer allegedly suffered would be limited to July and August 2013—not a $240,000 sum over a four-year period. It is improbable Call paid for Palmer's care after their marriage. Thus, the court finds a genuine issue of material fact, albeit narrow and limited, regarding Palmer's alleged lost wages relating to Call in July and August 2013. Accordingly, Defendants' motion is granted in part and denied in part as to Palmer's claim for lost wages.

### B. Future Lost Earning Capacity

Palmer asserts that she has a permanent impairment that will negatively affect her ability to work in the future. Plaintiffs have a "general right to recover for lost earning capacity." *Corbett v. Seamons*, 904 P.2d 229, 232 (Utah Ct. App. 1995). To recover for lost earning capacity, "a plaintiff must show that [her] injury has caused a diminution in [her] ability to earn a living." *Dalebout v. Union Pac. R. Co.*, 980 P.2d 1194, 1200 (Utah Ct. App. 1999). Further, "the loss must be proven with 'reasonable certainty,' although not 'mathematical certainty.'" *Corbett*, 904 P.2d at 232 (quoting *Detraz v. Hartford Accident & Indem. Co.*, 647 So.2d 576, 579 (La. App. 1994)). "When the injured party works in his or her own business and does not receive a set salary or wage, earning capacity may be calculated by reference to the cost of hiring a replacement to perform the tasks the injured party was formerly able to do." *Id.*

Defendants argue that Palmer has produced virtually no evidence to support her damages claim for lost earning capacity. None of Palmer's expert witnesses have stated that Palmer's injuries would affect her future earning capacity. Dr. Joseph testified in his deposition that he

6

had no opinion as to Palmer's employability or her future prospects in the job market. In addition, Dr. Joseph testified that he never obtained a vocational evaluation for Palmer regarding her employability. While Dr. Joseph did assign Palmer an impairment rating, he could not say whether that impairment rating would affect Palmer's role as an in-home caregiver. Further, Defendants argue that Palmer failed to designate any expert witnesses to testify regarding lost earning capacity.

Palmer counters by pointing to the fact that Dr. Joseph assigned her a permanent impairment rating, and "[s]ome jurisdictions require no more than proof that the plaintiff has a permanent injury somehow causing work difficulties to send to the jury the question of damages for impairment of future earning capacity." *Dalebout*, 980 P.2d at 1201. Furthermore, Palmer contends that she designated her expert witnesses to testify at trial about, but "not limited to," the cost of Palmer's treatment, effects of her injury, and duration of her injury, thereby leaving the door open for her experts to testify regarding earning capacity.

The court finds Palmer's contentions to be without merit. First, Palmer failed to provide any evidence, including expert testimony, to support her argument for lost earning capacity. Dr. Joseph admitted he had no opinion as to her employability, nor could he say if her impairment would affect her abilities as a caregiver. Second, Palmer misconstrues the language from *Dalebout*. Specifically, not only must plaintiffs provide proof of a permanent injury, but they also must provide proof that the "permanent injury somehow caus[es] work difficulties." *Id.* Palmer has failed to produce sufficient evidence to prove that her impairment causes her work difficulties. Third, the court cannot permit Palmer's expert witnesses to testify regarding lost earning capacity simply because Palmer's witness designations included the phrase "not limited to." While the topic of lost earning capacity arguably falls within the scope of testimony about,

7

but "not limited to," the effects of the injury, such ambiguity conflicts with the underlying disclosure principles of Rule 26(a)(2)(C). Lastly, since Palmer ran her own business and did not hire any replacements to perform tasks she could no longer do, the court can merely speculate as to a calculation for lost earning capacity.[1] Therefore, Defendants' motion is granted as to future lost earning capacity, and the court will preclude Palmer's experts from testifying on that subject at trial.

### C. Future Medical Expenses

In Palmer's First and Second Supplemental Initial Disclosures, she included future medical expenses as a category of special damages to be incorporated into her overall damages calculation. She designated the actual amount of future medical expenses as "[p]ending" and stated that such expenses were "to be determined via experts." Palmer designated Dr. Joseph as her only retained expert witness. In addition, she designated her health care providers as non-retained expert witnesses. However, Palmer concedes that neither Dr. Joseph nor any of Palmer's treating physicians or health care providers have ever told her that she will need future treatment for her injuries. Nevertheless, Palmer argues that the court should permit her expert witnesses to testify regarding future treatment and associated medical expenses at trial.

Palmer has failed to produce any evidence in support of her claim for future medical expenses. The court cannot allow her experts to opine on the subject for the first time at trial. Therefore, Defendants' Motion for Partial Summary Judgment is granted as to Palmer's claim for future medical expenses, and the court will preclude her experts from testifying on that subject at trial.

---

[1] Palmer claims she reimbursed her daughters for their help in caring for Call. However, she did not know how much she paid them, nor did she know the amount of any expenses to be deducted associated with the care. In this instance, without further evidence, Call's own testimony is insufficient to create a genuine issue of material fact.

### 1. Dr. Joseph's Expert Testimony

In their motion, Defendants seek to preclude Dr. Joseph from offering any expert testimony at trial because Palmer failed to produce—and Dr. Joseph did not prepare—a written expert report as required by Rule 26(a) of the Federal Rules of Civil Procedure. Rule 26(a)(2) requires a retained expert witness to provide a written report including "a complete statement of all opinions the witness will express and the basis and reasons for them." Importantly, "Rule 26(a)(2)'s requirements 'are mandatory and self-executing.'" *Kern River Gas Transmission Co. v. 6.17 Acres of Land, More or Less, in Salt Lake Cty., Utah*, 156 F. App'x 96, 102 (10th Cir. 2005) (quoting *Lohnes v. Level 3 Commc'ns, Inc.,* 272 F.3d 49, 59 (1st Cir. 2001)). Nevertheless, in at least one other jurisdiction, courts have held that "a party is considered to have met its obligations for expert disclosure so long as all required information is divulged in either the written report or a subsequent deposition of the expert." *Iacangelo v. Georgetown Univ.*, 272 F.R.D. 233, 234 (D.D.C. 2011).

In the event a party "fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). When analyzing whether a failure was substantially justified or harmless under Rule 37(c)(1), the Tenth Circuit considers the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Gillum v. United States*, 309 F. App'x 267, 269 (10th Cir. 2009) (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)).

In *Gillum*, the plaintiff retained a doctor as an expert witness regarding the plaintiff's husband's medical care. *Id.* at 268. A month after being retained, the expert submitted a small report briefly stating his conclusions. *Id.* The report contained nothing else required by Rule 26(a)(2)(B). *Id.* With that limited information, and the defendant's counsel's independent research, the defendant took the expert's deposition. *Id.* Ultimately, the defendant filed a motion in limine to exclude the expert's testimony at trial because of his failure to comply with the written report requirements. *Id.* The district court granted the defendant's motion finding the defendant had been prejudiced by the insufficient report and that such prejudice could not be cured. *Id.* at 268-69. The Tenth Circuit, however, reversed and held that any prejudice due to the inadequate report "was capable of being cured" because the defendant (1) deposed the expert; (2) had the plaintiff's responses to the motion in limine; and (3) the plaintiff made the expert available for a second deposition before discovery ended. *Id.* at 270. The court noted that despite the inadequate report, the defendant had become aware of the substance of the expert's testimony. *Id.* Thus, while the court did not condone the plaintiff's behavior regarding the report, it held that the total exclusion of the expert's testimony "was too extreme a sanction." *Id.*

Although Palmer failed to produce a written report from Dr. Joseph, Defendants' opportunity to depose Dr. Joseph cured that defect. Once Defendants deposed Dr. Joseph, they became aware of the substance of his testimony and would no longer be surprised by his testimony at trial. Still, Defendants raise the issue that Dr. Joseph was supposed to examine Palmer again on June 25, 2018 and then provide an expert report even though neither event ever took place. Had Dr. Joseph examined Palmer a second time, a written report would have been necessary given that Defendants had already deposed Dr. Joseph, and they would need any new information resulting from the subsequent examination. However, because the follow-up

examination never occurred, Defendants can continue relying on Dr. Joseph's original opinions in his deposition. Despite Palmer's disregard for the Rule 26(a)'s requirements like the plaintiff in *Gillum*, Defendants' deposition of Dr. Joseph cured any resulting prejudice. As such, the court will not completely exclude Dr. Joseph from testifying at trial.[2]

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on Smith's claim for $52,277.43 in property damage resulting from the accident. Under Utah law, there is a three-year statute of limitations that governs claims for injury to personal property. Utah Code Ann. § 78B-2-305(2). Nevertheless, Utah courts have recognized instances involving "exceptional circumstances" in which applying the statute would be "irrational or unjust." *Macris v. Sculptured Software, Inc.*, 24 P.3d 984, 989 (Utah 2001). The determination of whether a case falls into this category turns on a balancing test. *Id.* Before a court can reach the balancing test, however, "an initial showing must be made that the plaintiff did not know of and could not reasonably have known of the existence of the cause of action in time to file a claim within the limitation period." *Id.* (quoting *Warren v. Provo City Corp.*, 838 P.2d 1125, 1129 (Utah 1992)).

In this case, the accident occurred on June 8, 2013. In her deposition, Smith testified that she was notified about the accident shortly after it occurred. Eventually, Palmer filed suit in Utah state court on March 20, 2017. Palmer filed her First Amended Complaint and included Smith as a plaintiff on July 21, 2017. Thus, at the time Palmer included Smith as a plaintiff, the statute of limitations on Smith's property damage claim had already run.

Despite the statute of limitations, in her Opposition, Smith argues that her claim should survive with Palmer's claim because both actions "arise out of the same incident and

---

[2] While the court will not entirely exclude Dr. Joseph's testimony, it will not permit Dr. Joseph to testify regarding future medical expenses or lost earning capacity for the reasons stated in the corresponding sections above.

11

occurrence." Although unclear, it seems that Smith attempts to raise the relation-back doctrine, which allows for an "amendment to a pleading to relate[] back to the date of the original pleading" when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 37(c)(1). Yet, in this case, the relation-back doctrine does not allow for Smith's claim to survive. Even if Palmer included Smith as a plaintiff in the original complaint, the statute of limitations had already run. Accordingly, Defendants' Motion for Summary Judgment on Smith's claims is granted.

## CONCLUSION

Based on the foregoing reasoning, Defendants' Motion for Partial Summary Judgment [ECF Docket No. 30] is GRANTED IN PART and DENIED IN PART, and Defendants' Motion for Summary Judgment [ECF Docket No. 31] is GRANTED.

DATED this 15th day of February, 2019.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge